STANDARD CHEMICALS AND METALS CORPORATION, Appellant,
*v.* WAUGH CHEMICAL CORPORATION, Respondent.

First Department, December 3, 1920.

Sales — action to recover for breach of contract of sale — effect of order of President fixing maximum price at less than contract price — application of price-fixing order to contracts executed prior thereto — constitutional law — power of Congress to enact war measure impairing obligation of existing contracts.

In an action to recover damages sustained by reason of the defendant's failure to take deliveries of a chemical product known as twenty per cent oleum it appeared that the contract, which was executed on September 28, 1917, fixed the price at forty-five dollars per ton and provided for delivery in installments; that thereafter and before final delivery the President of the United States, pursuant to the authority in him vested by the Lever Act, which became a law on August 10, 1917, issued an order fixing the maximum price of oleum at thirty-two dollars per ton, said price to take effect on June 27, 1918.

*Held,* that while the contract was not illegal in its inception, its performance became illegal after the promulgation of the presidential order, and that order had the effect of destroying the agreement.

The price-fixing order of the President applied to and affected contracts for the commodity in question made before the issuance of the order.

Congress has the power to enact a law as a war measure which will have the effect of impairing the obligation of existing contracts, and the Lever Act furnishes inherent evidence that the intention of Congress was to ignore existing contracts concerning the commodity in question.

APPEAL by the plaintiff, Standard Chemicals and Metals Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of August, 1920, denying the plaintiff's motion for judgment upon its demurrer to the affirmative defense set forth in the second amended answer of the defendant.

*Abraham Benedict,* for the appellant.

*Joseph H. Kutner* of counsel [*Myers & Kutner,* attorneys], for the respondent.

GREENBAUM, J.:

The action is brought to recover damages alleged to have been sustained by the plaintiff by reason of defendant's

failure to take deliveries of a certain chemical product known as twenty per cent oleum under an agreement made September 28, 1917, wherein the plaintiff agreed to sell and defendant to purchase 1,600 tons of said twenty per cent oleum at the price of forty-five dollars per ton, deliveries to be made in installments up to June, 1918. In its answer the defendant sets up as a separate defense that while the contract was in force and before all the oleum had been delivered, the President of the United States pursuant to authority conferred upon him by an act of Congress (40 U. S. Stat. at Large, 276, chap. 53, approved August 10, 1917), commonly known as the Lever Act, to fix the price of all necessaries therein enumerated, among which was oleum, did on the 27th day of June, 1918, fix the maximum price of twenty per cent oleum at thirty-two dollars per ton of 2,000 pounds, said price to take effect on said June 27, 1918, and continue thereafter subject to any revision in price which the government might make for deliveries after September 30, 1918, and that thereafter and on or about the 26th day of September, 1918, the maximum price of said twenty per cent oleum was duly fixed by the President of the United States at twenty-eight dollars per ton of 2,000 pounds, which price was to be in effect from September 30, 1918, to December 30, 1918. (See Official U. S. Bulletin, June 28, 1918, vol. 2, No. 347, p. 5; Id., September 27, 1918, vol. 2, No. 423, p. 13.) It is also alleged in this defense that by reason of the fact that the statute provided that it shall be unlawful to sell and deal in said oleum for more than the price fixed by the President, further performance under the agreement between the parties became illegal.

The appellant contends that the price-fixing order did not apply to contracts existing before the issuance of the President's order and that further performance thereof was not wholly illegal, but was enforcible at the reduced price fixed by the order.

We will consider the last-mentioned point first. The Lever Act (40 U. S. Stat. at Large, 277, § 4) provided *inter alia* that it was " unlawful * * * to exact excessive prices for any necessaries," which according to the complaint included oleum.

The order of the President issued pursuant to the Lever Act (40 U. S. Stat. at Large, 276, § 1) fixed the maximum

price of that article at the figures heretofore stated. There is no doubt that if any one attempted to sell oleum at a price higher than that fixed by the President's order he would be doing an unlawful act. Stating it differently, while the contract was not illegal in its inception its performance became illegal after the promulgation of the order. Of course, the parties were at liberty to validate the performance of the agreement provided plaintiff consented to sell the oleum at a price not exceeding the maximum price fixed in the order, and defendant agreed to purchase at that price, but that would involve the making of a new contract. The fact remains that performance of the contract under the terms originally provided was unlawful. It had the effect of destroying the agreement. Besides, it must be understood that when the parties entered into the agreement, they knew or they were presumed to know the provisions of the Lever Act, which was enacted prior to the making of the agreement and which was at all times subject to any presidential orders that might be made fixing the price of the product which was the subject-matter of the agreement.

We may now consider whether or not the price-fixing order affected contracts made before its issuance. The learned counsel for the appellant urges that the provisions of section 25 of the Lever Act under which the President was authorized specifically to fix the price of coal and coke exempted contracts previously entered into for those commodities. The provision referring to coal and coke reads as follows: " The maximum prices so fixed and published shall not be construed as invalidating any contract in which prices are fixed, made in good faith, prior to the establishment and publication of maximum prices by the commission." (40 U. S. Stat. at Large, 284, 286, § 25.)

It seems to us, however, that this very exception militates against appellant's contention. The 25th section of the Lever Act is devoted exclusively to coal and coke. Not only is the power conferred upon the President to fix the price of those articles and to regulate the conduct of the business in those commodities, but the President was empowered to requisition and take over the plant and business of the producer or dealer and operate the same. In other words, a much broader power

was given with respect to coal and coke than over other necessaries. The fact that the exemption is made as to prior contracts relating to coal and coke seems to us to indicate a clear intent of Congress not to exempt any contracts made prior to the promulgation under the terms of the Lever Act other than those affecting coal and coke.

This court in its opinion in *Boret* v. *Vogelstein & Co., Inc.* (188 App. Div. 605) said in a case which involved the question of impossibility of performance of a contract, that "if the contract had fixed the price of copper at a figure higher than twenty-three and one-half cents, and the government of the United States had thereafter legally fixed the price at twenty-three and one-half cents and forbidden sales at any other price, the contract would have been rendered illegal and unenforcible."

It doubtless is true as appellant argues that the language in that opinion was *obiter*. It nevertheless is available as a contribution to the consideration of the question under discussion. It is not disputed that Congress had the power to make an enactment as a war measure which might impair the obligation of existing contracts. (*Knox* v. *Lee*, 12 Wall. 457.)

The language of the act shows that it was adopted to meet a situation which required the conferring of sweeping powers upon the Chief Executive. It furnishes inherent evidence of the intention of Congress, excepting only the cases where exemptions are expressly made, as in the coal and coke contracts, to ignore existing contracts, which provided for a price in excess of that fixed by the presidential order and which otherwise might nullify the purposes of the war measure under review.

The demurrer to the defendant's defense was properly overruled and the order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements, with leave to plaintiff to withdraw demurrer on payment of said costs.